UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Gregory Montore,
    Claimant

    v.                              Case No. 11-cv-190-SM
                                    Opinion No. 2012 DNH 131
Michael J. Astrue, Commissioner,
Social Security Administration,
    Defendant


**O R D E R**


Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Gregory Montore, moves to reverse the Commissioner's decision denying his application for Social Security Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income Benefits under Title XVI of the Act. See 42 U.S.C. §§ 423, 1381, et seq. The Commissioner objects and moves for an order affirming his decision.


**Factual Background**

I.    Procedural History

On February 6, 2009, claimant filed an application for social security disability insurance benefits ("DIB benefits") as well as Supplemental Security Income benefits ("SSI benefits"), alleging that he had been unable to work since September 5, 2007.

He asserts eligibility for benefits based on disabilities due to chronic back pain, a mood disorder, bipolar disorder, and attention deficit disorder.  His application for benefits was denied and he requested an administrative hearing before an Administrative Law Judge ("ALJ").

On December 7, 2010, claimant, his attorney, and an impartial vocational expert ("VE") appeared before an ALJ. Claimant's sister testified on his behalf.  On December 23, 2010, the ALJ issued his written decision, concluding that claimant was not disabled.  He found that claimant has the residual functional capacity to perform medium work, with some restrictions.  In a Notice of Decision dated March 22, 2011, the Decision Review Board ("DRB") notified claimant that it had considered additional evidence and the written submission of claimant's counsel, and that it had affirmed the ALJ's decision.  Accordingly, the ALJ's decision became the final decision of the Commissioner, subject to judicial review.

Claimant then filed a timely action in this court, appealing the denial of DIB benefits.  Now pending are claimant's "Motion for Order Reversing Decision of the Commissioner" (document no.

9); the Commissioner's "Motion for Order Affirming the Decision
of the Commissioner" (document no. 12).


II.   <u>Stipulated Facts</u>

    Pursuant to Local Rule 9.1(d), the parties submitted a Joint
Statement of Material Facts which, because it is part of the
court record (document no. 13), need not be recounted in this
opinion.


**Standard of Review**

I.   <u>Properly Supported Findings by the ALJ are
     Entitled to Deference</u>.

    Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."  Factual findings of the Commissioner are
conclusive if supported by substantial evidence.[1]  <u>See</u> 42 U.S.C.

---

1    Substantial evidence is "such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion."  <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229
(1938).  It is something less than the weight of the evidence,
and the possibility of drawing two inconsistent conclusions from
the evidence does not prevent an administrative agency's finding
from being supported by substantial evidence.  <u>Consolo v. Federal
Maritime Comm'n.</u>, 383 U.S. 607, 620 (1966).

§§ 405(g); <u>Irlanda Ortiz v. Secretary of Health & Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).  Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  <u>See</u> <u>Tsarelka v. Secretary of Health & Human Services</u>, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").  <u>See also</u> <u>Rodriguez v. Secretary of Health & Human Services</u>, 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence.  <u>See</u> <u>Burgos Lopez v. Secretary of Health & Human Services</u>, 747 F.2d 37, 40 (1st Cir. 1984) (citing <u>Sitar v. Schweiker</u>, 671 F.2d 19, 22 (1st Cir. 1982)).  It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."  <u>Irlanda Ortiz</u>, 955 F.2d at 769

(citation omitted).  Accordingly, the court will give deference to the ALJ's credibility determinations, particularly when those determinations are supported by specific findings.  See Frustaglia v. Secretary of Health & Human Services, 829 F.2d 192, 195 (1st Cir. 1987) (citing Da Rosa v. Secretary of Health & Human Services, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  The Parties' Respective Burdens

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act places a heavy initial burden on claimant to establish the existence of a disabling impairment. See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human Services, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, claimant must prove that his impairment prevents him from performing his former type of work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985) (citing Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, claimant is not required to

establish a doubt-free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

If claimant demonstrates an inability to perform his previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that he can perform. See Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  See also 20 C.F.R. §§ 404.1512(g).  If the Commissioner shows the existence of other jobs that claimant can perform, then the overall burden to demonstrate disability remains with claimant.  See Hernandez v. Weinberger, 493 F.2d 1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) claimant's subjective claims of pain and disability, as supported by the testimony of claimant or other witnesses; and (3) claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d

at 6.  When determining whether a claimant is disabled, the ALJ is also required to make the following five inquiries:

> (1)  whether claimant is engaged in substantial gainful activity;
>
> (2)  whether claimant has a severe impairment;
>
> (3)  whether the impairment meets or equals a listed impairment;
>
> (4)  whether the impairment prevents claimant from performing past relevant work; and
>
> (5)  whether the impairment prevents claimant from doing any other work.

20 C.F.R. § 404.1520.  Ultimately, a claimant is disabled only if his:

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

**Discussion**

I.   <u>Background - The ALJ's Findings</u>

The ALJ concluded that claimant was not disabled.  In reaching his decision, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520.  He first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability.  Next, he concluded that claimant has the severe impairments of chronic back pain, a mood disorder, and attention deficit disorder.  Administrative Record ("Admin. Rec.") 41. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  <u>Id</u>. at 42-3.

Next, the ALJ concluded that claimant retained the residual functional capacity to perform medium work, except that claimant is limited to 1-3 step tasks; can make only simple work decisions; can adapt to only routine changes in the work environment; requires close supervision; and needs to avoid directing others.  <u>Id</u>. at 44.  The ALJ concluded, therefore, that claimant is unable to perform his past relevant jobs.  <u>Id</u>. at 46.

Finally, the ALJ considered whether there were any jobs in the national economy claimant could perform.  Relying upon the testimony of the VE as well as his own review of the medical record, the ALJ concluded that, notwithstanding claimant's limitations, "there were jobs that existed in significant numbers in the national economy that the claimant can perform," such as stuffer, laundry worker, and kitchen helper.  Id. at 47.

Consequently, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act.  Id.  Claimant, therefore, was deemed ineligible for DIB and SSI benefits.  Id. at 48.

## II.  <u>Severe Impairment of Bipolar Disorder</u>

At Step 2 of his analysis, the ALJ found that claimant suffers from the severe impairments of "chronic back pain, a mood disorder and attention deficit hyperactivity disorder."  Admin. Rec. 41.  Claimant alleges the ALJ committed reversible error at Step 2 in failing to find a severe impairment of bipolar disorder.  The argument is unsupportable.

For one thing, it is not at all clear that the ALJ failed to recognize claimant's bipolar disorder as a severe impairment.  In

his Step 2 analysis the ALJ credited the opinion of the state agency reviewer, Dr. Salt, that claimant has the severe impairments of "attention deficit hyperactivity disorder" and an "affective disorder." Id. at 42.  In colloquial terms, "[a]n affective disorder" under Listing 12.04 "is a mood disorder." Murphy v. Astrue, 2012 WL 1067683, at *2 (D. Me. March 29, 2012). Importantly, the only "affective disorder" Dr. Salt identified was bipolar disorder.  Admin. Rec. at 387.  Accordingly, in relying on Dr. Salt's assessment to reach the conclusion that claimant suffers from a severe impairment of a "mood disorder," the ALJ surely found that claimant suffers from the severe impairment of bipolar disorder.[2]

But even if some other explanation were more persuasive, a failure by the ALJ to find a severe impairment of bipolar disorder would not, on this record, constitute reversible error. A Step 2 error is harmless if the ALJ "continued through the remaining steps and considered all of the claimant's impairments." Syms v. Astrue, 2011 WL 4017870, at * 1 (D.N.H. Sept. 8, 2011) (DiClerico, J.).  Here, the ALJ did just that.  At

---

2    Notably, too, the ALJ in his Step 2 analysis expressly acknowledged that claimant had been diagnosed with bipolar disorder.

both Step 3 and in his discussion of claimant's RFC, the ALJ

credited Dr. Salt's opinion - which was based, in part, on her

recognition of claimant's bipolar disorder — as to the nature of

claimant's functional limitations flowing from the combination of

his impairments.  <u>See</u> Admin. Rec. at 43, 45.  The ALJ's express

reliance on Dr. Salt's opinion, therefore, establishes that the

ALJ considered claimant's bipolar disorder.  <u>Cf</u>. <u>Lynch v. Comm.</u>

<u>of Social Sec. Admin.</u>, 2012 WL 1085766, at *13 (N.D.W.Va. March

30, 2012) (finding that ALJ did not consider claimant's obesity

where he relied on the opinion of the state agency physician who,

at the time she completed her report, "was unaware of the

diagnosis of obesity").


III.  <u>The ALJ's Consideration of Dr. Dinan's Report</u>

    In April of 2010, claimant underwent a mental status

examination by psychologist William Dinan, Ph.D.  Dr. Dinan

opined, among other things, that claimant suffered from

"frequent" limitations in concentration, persistence, and pace,

and that he had experienced "repeated" limitations in "Stress

Reduction-Work related (deterioration and decompensation)."

Admin. Rec. 442.  He diagnosed claimant with "Bipolar I Disorder,

Most Recent Episode Manic, Severe with Psychotic Features; ADHD;

and Borderline Personality Features."  <u>Id</u>. at 443.  He further

opined that, even following treatment, claimant might not be able to return to work for one to two years. Id.

Claimant argues that the ALJ erred in his assessment of Dr. Dinan's report by (1) giving "limited weight" to Dr. Dinan's opinion based on a factual misapprehension, and (2) failing "to provide any reasons whatsoever for rejecting" Dr. Dinan's findings that suggest that claimant's bipolar disorder "meets or at least equals the requirements of Listing 12.04." Doc. No. 9, pg. 2.

A.    ALJ's Reason for Rejecting Dr. Dinan's Report is
      Supportable on the Record

In affording Dr. Dinan's opinion "only limited weight," the ALJ explained that he "considered the opinion" but found it not entirely credible for reasons "similar" to those he gave in rejecting the opinions of Dr. Batt and Dr. Stern.[3] Admin. Rec. 46. The ALJ found Dr. Batt's and Dr. Stern's opinions not entirely credible because they were "based primarily on the claimant's self-report." Id. at 45-46.

---

3    Although the ALJ did not discuss Dr. Dinan's report at Step 3, he did address it when he assessed claimant's residual functional capacity.

In support of his argument that his self-reports were not
the primary basis for Dr. Dinan's report, claimant correctly
points out that Dr. Dinan made numerous findings based on his own
observations, such as those regarding claimant's appearance,
behavior, characteristics of speech, affect, and content of
thought.  Admin. Rec. 441.  But there is substantial evidence to
support the ALJ's conclusion that Dr. Dinan's further findings
regarding claimant's ability to function "in terms of"
concentration, persistence, and pace and "stress reaction"
(deterioration and decompensation), id. at 442, were heavily
influenced by claimant's self-reports.  For example, in opining
that claimant had "frequent" functional loss in concentration,
persistence, and pace, Dr. Dinan provided the following
explanation:

> At home—chaotic but independent; at work—recently
> seasonal bartender 4 mo until 03/10—20 hrs/wk;
> tasks—adequate with familiar, basic jobs;
> attendance—erratic; frequent tardiness.

Admin. Rec. 442.


Similarly, in explaining why he checked the box "frequent"
under the category for deterioration and decompensation, Dr.
Dinan wrote:

13

Increased mood variation under stress; cigarettes—1
pk/day; alcohol—rarely, some past intermittent
problems; illegal drugs—none; no past problems RX—no
past problems; arrested 2x ('04, '05) dwi, domestic;
jail 1x ('05) 1 mo.; no prison; no military.

Id.


In comparison, Dr. Salt, whose opinion the ALJ accorded
"great weight," conducted a review of claimant's medical records,
taking into account claimant's longitudinal mental health
history.  Based on that review, she opined that claimant suffered
only "moderate" limitation in concentration, persistence, and
pace, and had experienced no periods of decompensation.  Id. at
394.  She noted, among other things, that claimant's treating
psychiatrist, Dr. Batt, had reported "a decrease in
distractibility and increase in attention span," and that
claimant "has had no inpatient hospitalizations" for the period
reviewed.  Id. at 396.


Accordingly, although one can presume that Dr. Dinan's
findings were based not only on claimant's self-reports, but also
on Dr. Dinan's own observations, there is substantial evidence to
support the ALJ's conclusion that Dr. Dinan's report is entitled

to "only limited weight" because it relies too heavily on the former.[4]

   B.   <u>The ALJ Did Not Improperly Overlook Dr. Dinan's
        Specific Findings Relating to Listing 12.04</u>

     Claimant contends that Dr. Dinan's findings support a

conclusion that his mental impairment meets Listing 12.04.  To

meet Listing 12.04, "a claimant must show that he meets the

requirements of Parts A and B or C."  <u>Beaton v. Astrue</u>, 2011 WL

1051060, at *4 (D.N.H March 23, 2011) (citing 20 C.F.R. Part 404,

Subpart P, Appendix 1).  Part B requires a claimant to prove that

he has at least two of the four listed criteria: (1) marked

restriction of activities of daily living; or (2) marked

difficulties in maintaining social functioning; or (3) marked

difficulties in maintaining concentration, persistence, or pace;

or (4) repeated episodes of decompensation, each of extended

duration.  <u>Id</u>.


     Because Dr. Dinan found that claimant had "marked"

limitation in concentration, persistence, and pace, and that he

---

4    The court also rejects claimant's argument that the ALJ's
explanation for rejecting Dr. Dinan's opinion was too conclusory.
His explanation provides claimant, and this court, with
sufficient information.

had had "frequent" episodes of decompensation, his opinion would support a finding that claimant met the requirements of Listing 12.04. But rather than credit Dr. Dinan's findings, the ALJ, instead, accorded "great weight" to Dr. Salt's findings that claimant suffered only "moderate" limitations in concentration, persistence, and pace, and had experienced no episodes of decompensation. Claimant says the ALJ should have addressed Dr. Dinan's specific findings, and that his failure to do so is reversible error.

The court disagrees. As noted, the ALJ stated that he was giving limited weight to the whole of Dr. Dinan's report, and he gave as a reason the fact that it was disproportionately based on claimant's self-reports. Although the ALJ did not <u>also</u> specifically address Dr. Dinan's findings regarding claimant's concentration, persistence, and pace, and history of decompensation, he was not required to do so. It is true, as claimant points out, that an ALJ's failure to discuss medical opinions may sometimes warrant remand where the ALJ's silence renders meaningful judicial review impossible. <u>See</u> <u>Lord v. Apfel</u>, 114 F. Supp. 2d 3, 15-16 (D.N.H. 2000) (Barbadoro, J.). Here, however, the ALJ's stated reason for giving limited weight to the entirety of Dr. Dinan's report is sufficient to allow

16

meaningful review - as illustrated by the court's discussion in subpart A, above.

Moreover, this case is not like <u>Snow v. Astrue</u>, 2011 WL 4828656 (D.N.H. Oct. 12, 2011), or <u>Dwyer v. Astrue</u>, 2012 WL 2319097 (D.N.H. June 19, 2012).  In those cases, the court found that the ALJ erred where, although crediting a medical provider's entire report (<u>Snow</u>) or certain of findings in it (<u>Dwyer</u>), he did not discuss highly probative findings from the same report that were inconsistent with his disability determination.  In both cases, remand was warranted because the ALJ's silence made it impossible for the court to know whether he "considered and rejected" the highly probative findings, or whether he "merely overlooked" them.  <u>Dwyer</u>, 2012 WL at *5.  Here, the ALJ expressly gave "only limited weight" to the entirety of Dr. Dinan's report, and he gave a reason for doing so.  Unlike in <u>Snow</u> and <u>Dwyer</u>, there is no ambiguity in what the ALJ did and why he did it.  The ALJ here did not, therefore, err in "failing" to address Dr. Dinan's specific findings relating to the criteria for Listing 12.04.

IV.   <u>The ALJ's Hypothetical Accounted for Claimant's Limitations
      and the ALJ Did Not Err in Relying on the VE's Testimony</u>

Claimant says the ALJ's hypothetical to the VE did not fully account for his "moderate" limitation in concentration, persistence, and pace.  He further argues that he is entitled to a remand because the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT") and the ALJ failed to resolve that inconsistency.  Neither argument is supportable.

A.   <u>Hypothetical</u>

The ALJ found that claimant suffered from a "moderate" degree of limitation in concentration, persistence, and pace.  In his hypothetical to the VE, the ALJ asked the expert to assume claimant was limited to simple (one to three step) and repetitive tasks that involved only simple work-related decisions (and work place changes); that he needed close supervision to ensure he remained on task; and that he could be involved in only occasional interaction with coworkers and the public.  Admin. Rec. 97-99.  Claimant says these limitations do not reflect a "moderate" degree of limitation in concentration, persistence, and pace.

18

Courts have held that it is sometimes error for an ALJ to limit his hypothetical to simple unskilled routine work, involving limited interaction with others, where he has found that claimant has moderate limitations in concentration, persistence, and pace.  See e.g., Winschel v. Commissioner of Social Security, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing Stewart v. Astrue, 561 F.3d 679, 684-85 (7th Cir. 2009) (per curiam).  Nevertheless, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." Winschel, 631 F.3d at 1180 (collecting cases).

Here, Dr. Salt, who is an acceptable medical source, 20 C.F.R. § 404.1513(a)(1),(2), opined that claimant's moderate limitation in concentration, persistence, and pace did not prevent him from doing simple routine work, even "without special supervision."  Admin. Rec. 400.  The ALJ accepted Dr. Salt's assessment, except he included a more restrictive limitation to "close supervision."  Accordingly, because there was medical evidence that claimant's moderate limitation in concentration, persistence, and pace did not rule out the ability to do

19

unskilled, routine work, the ALJ's hypothetical did not fail to account for claimant's limitation.

    B.   <u>VE's Testimony</u>

Claimant argues that remand is required because the VE's testimony conflicted with the DOT.  Specifically, he says that the VE's testimony relating to jobs that require "close supervision" conflicts with the DOT because the DOT does not address the issue of "close supervision."

Where there is a conflict between the VE's testimony and the DOT, the ALJ must inquire about it and explain how he resolved the inconsistency.  <u>See</u> SSR 00-4p, 2000 WL 1898704, at *2.  But "the ALJ need only resolve such conflicts where they are apparent and have been identified."  <u>Aho v. Commissioner of Social Sec. Admin.</u>, 2011 WL 3511518, at *14 (D. Mass. 2011), <u>citing</u> SSR 00-4p, 2000 WL 1898704, at *2 and <u>Donahue v. Barnhart</u>, 279 F.3d 441, 446 (7th Cir. 2002) (SSR 00-4p "requires an explanation only if the discrepancy was 'identified' ....").

Here, there was no reversible error because the conflict was not "apparent," and claimant's counsel did not identify the purported conflict at the time the VE testified.  The implicit

conflict "was not deemed sufficient to merit adversarial development in the administrative hearing"; claimant, therefore, will "not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error." Gibbons v. Barnhart, 85 Fed. Appx. 88, 93 (10th Cir. Dec. 18, 2003) (quotation omitted).

### Conclusion

For the foregoing reasons, claimant's motion to reverse the decision of the Commissioner (document no. 9) is denied.  The Commissioner's motion to affirm his decision (document no. 12) is granted.  The Clerk of Court shall enter judgment in accordance with this order and close the case.


**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 20, 2012

cc:  Raymond J. Kelly, Esq.
     Robert J. Rabuck, Esq.